UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICENTE ANTONIO LOPEZ,<br><br>　　　　Petitioner,<br><br>v.<br><br>TODD LYONS, et al.,<br><br>　　　　Respondents. | No. 2:25-cv-03174-DJC-CKD<br><br><br><br>ORDER |

　　　　Petitioner Vicente Antonio Lopez is presently in the custody of United States Immigration and Customs Enforcement ("ICE"). This case is one of many in this District and Circuit that share a similar basic factual pattern. Petitioner entered the United States several years ago, was detained by immigration officials at the time of his entry, was released from custody, and has resided in the United States for many years since. Petitioner was recently taken into custody during his annually scheduled check-in with ICE. Petitioner has filed a Petition for Habeas Corpus along with a Motion for Temporary Restraining Order, arguing that his present detention violates his due process rights and violates the Administrative Procedure Act ("APA").

　　　　In the numerous similar cases, district courts in this Circuit have applied a largely similar approach. Based on the substantial weight of this authority and for the reasons stated below, the Court grants Petitioner's Motion for Temporary Restraining

1  Order. The Court orders Petitioner released and will set a further briefing scheduled
2  on the Motion for Preliminary Injunction.

## BACKGROUND

Petitioner is a citizen and national of Nicaragua who entered the United States in April 2022. (Pet. (ECF No. 1) ¶¶ 16, 63–64; Opp'n (ECF No. 6) at 1.) Shortly after his entry, Petitioner was detained by Customs and Border Enforcement. (Pet. ¶ 64; Opp'n at 1.) Petitioner was released on his own recognizance on May 17, 2022, via an Order of Release on Recognizance. (Opp'n at 1; Reply (ECF No. 7) at 6.) Petitioner asserts that since his release, he has complied with all immigration requirements, including annual check-ins with ICE. (Pet. ¶ 65.) In April 2023, Petitioner filed an application for asylum, which remains pending. (*Id.* ¶ 66.) In July 2024, Petitioner filed an application for a U Visa based on a 2023 crime of which he was the victim. (*Id.* ¶ 67–68.) Petitioner was granted a bona fide determination on his U Visa application on December 20, 2024. (*Id.* ¶ 67.)

On October 17, 2025, Petitioner attended his annual check-in with ICE, during which he was detained. (Pet. ¶ 65; Opp'n at 2.) Respondents state that this was done because Enforcement and Removal Operations determined that Petitioner was subject to expedited removal. (Opp'n at 2.) Petitioner now filed a Petition for Writ of Habeas Corpus along with a Motion for Temporary Restraining Order. (Pet.; Mot. (ECF No. 2-1)). The Motion for Temporary Restraining Order is fully briefed. (Opp'n; Reply.) The Court ordered this matter submitted without oral argument. (*See* ECF No. 4.)

## LEGAL STANDARD

The standards for issuing a temporary restraining order and a preliminary injunction are "substantially similar." *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain preliminary injunctive relief, Plaintiff must show (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his

favor; and (4) that an injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008).

## DISCUSSION

### I. Likelihood of Success on the Merits

#### A. Detention and Removal under Sections 1225 and 1226

As an initial matter, Respondents assert that Petitioner is subject to expedited removal under 8 U.S.C. § 1225. (Opp'n at 6.) Petitioner contends that this is in error and Petitioner is instead subject to 8 U.S.C § 1226 as he was released on his own recognizance in 2022. (Reply at 5–7.) Petitioner appears correct that section 1226 applies here.

The distinction between and application of sections 1225 and 1226 is one of the many issues that other courts have addressed in similar cases.  *See, e.g.*, *C.A.R.V. v. Wofford*, No. 1:25-cv-01395-JLT-SKO, 2025 WL 3059549, at *3–7 (E.D. Cal. Nov. 3, 2025) (quoting *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC, 2025 WL 2637503 (N.D. Cal. Sept 12, 2025)); *see also Rico-Tapia v. Smith*, --- F. Supp. 3d ----, 2025 WL 2950089, at *4–7 (D. Haw. Oct. 10, 2025).  These courts have done a thorough review of the interplay of these two statutes and, in the interest of expediency, this need not be repeated here.  In short, both sections 1225 and 1226 govern the detention and removal of inadmissible noncitizens from the United States.

Section 1226 is the "usual removal process" which involves a hearing before an immigration judge after a Notice to Appear is filed with the Immigration Court under 8 U.S.C. § 1229.  *See C.A.R.V.*, 2025 WL 3059549, at *3.  "When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination.  A noncitizen will be released if he or she 'demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.'"  *Id.* at *3 (internal citations omitted) (quoting *Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022)).  "Where the release decision was made by a DHS officer, not an immigration judge, the

1   Government's practice has been to require a showing of changed circumstances
2   before re-arrest." *Id.* (citing *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal.
3   2017).

4       Section 1225(b)(1) provides for expedited removal proceedings under certain
5   conditions.[1]  Under this section, an applicant for admission is subject to expedited
6   removal if "the applicant (1) is inadmissible because he or she lacks a valid entry
7   document; (2) has not 'been physically present in the United States continuously for
8   the 2-year period immediately prior to the date of the determination of
9   inadmissibility'; and (3) is among those whom the Secretary of Homeland Security has
10  designated for expedited removal." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S.
11  103, 109 (2020) (quoting 8 U.S.C. § (b)(1)(A)(iii)(II)).  Notably, section 1225(b)(1) "does
12  not apply to aliens who are <u>already present in the country</u>" *Rico-Tapia*, 2025 WL
13  2950089, at *7 (emphasis in original).

14      It is uncontested that Petitioner was originally detained in April 2022 and was
15  released on his own recognizance in May 2022.  It is also uncontested that Petitioner
16  was taken into ICE custody on October 27, 2025, over three years after Petitioner
17  entered the country.  Thus, Section 1225(b)(1) flatly does not apply to Petitioner as he
18  has been present without a determination of inadmissibility within two years of
19  Petitioner's entry.  Respondents seek to categorize Petitioner's initial 2022 contact with
20  immigration officials as a "determination of inadmissibility" for purposes of section
21  1225(b)(1).  (*See* Opp'n at 6.)  But the Order of Release on Recognizance specifically
22  states that Petitioner was released pursuant to section 1226.[2]  (*See* ECF No. 2-2 at 10.)
23  Thus, the claim that Petitioner should now be subject to expedited removal over three

---

[1] Subsection (b)(2) provides for separate conditions for removal not covered by subsection (b)(1).  As Respondents only assert that expedited removal under subsection (b)(1) applies to Petitioner, the Court does not discuss subsection (b)(2).

[2] The Order specifically says that Petitioner was released "[i]n accordance with section 236 of the Immigration and Nationality Act and the applicable provisions of Title 8 of the Code of Federal Regulations[.]"  (ECF No. 2-2 at 10.)  Section 236 of the Immigration and Nationality Act is codified in section 1226.  *Rico-Tapia*, 2025 WL 2950089, at *7.

4

years after his initial entry into the United States when he was initially released under section 1226 is inconsistent with the facts and law.

### B. Due Process

Petitioner has established a likelihood of success on his due process claim. The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). While noncitizens located outside the country are not granted the full protections of the Constitution, the Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings, including final deportation orders. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process.").

As has been detailed by numerous other Courts, individuals released from ICE custody have a protected interest in remaining out of custody. *See Pinchi v. Noem*, --- F. Supp. 3d ----, 2025 WL 2084921, at *3 (N.D. Cal. July 24, 2025). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia*, 2025 WL 2950089, at *8 (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 481–82 (1972). Petitioner was released on his own recognizance by the Government in 2022. Since that time, he has remained out of custody, without incident. Petitioner has a clear liberty interest in his continued freedom. The Court must thus determine what process is due.

To determine what process is due, the Court considers three factors: (1) "the private interest that will be affected by the official action[,]" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[,]" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

It cannot be gainsaid that Petitioner has a substantial private interest in maintaining his out-of-custody status. Freedom from imprisonment is at the core of the Due Process Clause. *Zadvydas*, 533 U.S. at 690. As has been repeatedly stated, Petitioner has remained out of custody for over three years. At the time of his detention, Petitioner was employed both as a dishwasher and as a worker at a sausage packaging company. (Pet. ¶ 68.) It also appears Petitioner is involved in the community, regularly attending local church services. (*Id.*) Petitioner's release has permitted him to build a life within the bounds of the conditions imposed by his release. Petitioner has a substantial private interest in being out of custody, and his detention denies him that liberty interest. *See Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").

The risk of erroneous deprivation is also considerable. The record suggests that Petitioner has never received a bond hearing. "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306, (2018) (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). And detention under this statute is justified when an alien poses a flight risk or a danger to the community. *See Zadvydas*, 533 U.S. at 690. Petitioner asserts, and Respondents do not contest, that Petitioner has no criminal record and has been in full compliance with every immigration requirement imposed on him. (Mot. at 2.) Respondents have not argued or presented any evidence that there has been a

change in circumstance between his 2022 entry into the United States and his detention on October 27, 2025. Thus, the value of additional procedural safeguards here is substantial.

Finally, Respondents' interest in detention is low. *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970; *see Hernandez*, 872 F.3d at 994. The effort and cost required to provide Petitioner with procedural safeguards are minimal.

\* \* \* \*

Having found that Petitioner has a liberty interest and determined, via the *Mathews* factors, that he is entitled to process, and that process should have been afforded to him immediately upon detention. The Court finds that Petitioner has established a likelihood of success on the merits of his due process claim.

**II. Irreparable Harm.**

Petitioner will suffer irreparable harm in the absence of preliminary injunctive relief. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Moreover, "[t]he Ninth Circuit has recognized 'irreparable harms imposed on anyone subject to immigration detention' including 'the economic burdens imposed on detainees and their families as a result of detention.'" *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). The Petitioner has thus established irreparable harm.

**III. Balance of the Harms/Public Interest**

The final two *Winter* factors merge when the government is the nonmoving party. *Baird*, 81 F.4th at 1040. Public interest concerns are always implicated as "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002 (internal quotations and citations omitted). "The government also cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Baird*, 81 F.4th at 1042

(internal quotations and citations omitted). Moreover, the analysis of the *Pinchi* court is persuasive here:

> "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F.*, 2021 WL 783561, at *3 (cleaned up); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) (quoting *Padilla v. Immigration & Customs Enforcement*, 953 F.3d 1134, 1147–48 (9th Cir. 2020)) ("It is always in the public interest to prevent the violation of a party's constitutional rights."); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). As other courts in this district have concluded under similar circumstances, the potential harm to Ms. Garro Pinchi is significant—she faces immediate and potentially prolonged ICE detention, putting her family's financial survival and her already precarious health at risk— while the potential harm to the government is minimal. The only potential injury the government faces is a short delay in detaining Ms. Garro Pinchi if it ultimately demonstrates to a neutral decisionmaker by clear and convincing evidence that her detention is necessary to prevent danger to the community or flight. *See Jorge M. F*, 2021 WL 783561; *Diaz*, 2025 WL 1676854. The government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). "Faced with ... a conflict between minimally costly procedures and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor." *Singh*, 2025 WL 1918679, at *9 (quoting *Hernandez*, 872 F.3d at 996) (cleaned up).

*Pinchi*, 2025 WL 2084921, at *7

There also appears to be no dispute as to Petitioner's risk of flight or danger to the community. For these reasons and those set forth in *Pinchi*, the Court concludes that the equities and public interest weigh minimally in favor of Petitioner.

**IV. Bond**

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court has "discretion as to the amount of security required, if any," and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (citation modified). Because "the [Government] cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations," *Zepeda*, 753 F.2d at 727, the Court finds that no security is required here.

## CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. Petitioner's Motion for Temporary Restraining Order (ECF No. 2) is GRANTED;
2. Petitioner Vincente Antonio Lopez shall be released immediately from Respondents' custody. Respondents shall not impose any additional restrictions on him, such as electronic monitoring, unless that is determined to be necessary at a future pre-deprivation/custody hearing.
3. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice – describing the change of circumstances necessitating his arrest – and detention, and a timely hearing. At any such hearing, the Government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner

poses a danger to the community or a risk of flight, and Petitioner shall be allowed to have his counsel present.[3]

4. A hearing on the Motion for Preliminary Injunction is set for November 21, 2025, at 10:00 a.m. via Zoom. On or before November 11, 2025, Petitioner shall file a Motion for Preliminary Injunction. On or before November 17, 2025, Respondents shall file their opposition, if any, to Petitioner's Motion. On or before November 20, 2025, Petitioner may file a reply to Respondents' opposition.

IT IS SO ORDERED.

Dated:   **November 7, 2025**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

---

[3] This burden of proof has been regularly applied by courts reviewing similar cases, and the Court adopts the views of those courts here. *See e.g.*, *Pablo Sequen v. Albarran*, --- F.Supp.3d ----, 2025 WL 2935630, at *13–14 (N.D. Cal. Oct. 14, 2025); *Martinez Hernandez v. Andrews*, No. 1:25-cv-01035-JLT-HBK, 2025 WL 2495767, at *13–14 (E.D. Cal. Aug. 28, 2025); *Castellon v. Kaiser*, No. 1:25-cv-00968-JLT-EPG. 2025 WL 2373425, at *11–12 (E.D. Cal. Aug. 14, 2025).